HANS H. OLSON v. STATE BANK and Others.

May 20, 1898.

Nos. 11,056—(174).

**Receiver—Duties—Legal Services when an Attorney.**
The duties of a receiver for an insolvent are strictly administrative or executive; and he is not required, because he happens to be an attorney at law, to perform legal services in behalf of the estate.

**Same—Allowance of Counsel Fees.**
A receiver is under obligation to perform such duties in respect to the trust as any ordinarily competent business man is presumed to be capa-

ble of performing. It is only for services requiring special legal skill that he will be allowed counsel fees.

### Same — Attorney as Receiver of Bank — Employing Counsel — Compensation.

A receiver of an insolvent banking corporation was appointed under an order which authorized him to employ necessary counsel, and provided for the payment of such counsel. The receiver was also an attorney at law. When making a partial report, he presented, among other accounts, one for services rendered by counsel employed by him in various legal matters connected with the estate. The court below wholly disallowed and rejected a number of items contained in this account, on the ground that "all of the services set forth in the attorney's bill, * * * in items disallowed, should either have been performed by the receiver, or if performed by another, at his request, should be paid for by him." *Held* error. It was not the duty of the receiver to perform all of the services said to have been rendered, or to pay for the same when performed by another.

### Same—Reasonableness of Counsel Fees—Evidence—Judicial Notice.

When passing upon the reasonableness of charges made for counsel fees in such a case, the judges of the court can rightfully use their personal knowledge as to what has been done by the attorney, and can also take into consideration the character of legal services theretofore rendered by counsel, and the amount already allowed on account thereof. The correctness of such an account is not to be determined, as in ordinary cases, exclusively upon the evidence introduced on the hearing.

### Same—Allowance of Trust Account — Appeal—Revision—Abuse of Discretion.

It is the duty of the courts, whether objections are or are not made by the creditors of a trust estate, to supervise and closely scrutinize the trust account. When this is done in accordance with the rules of law which govern, this court will not interfere or direct a revision, except where there has been an abuse of that sound discretion which, of necessity, rests with the lower courts.

Appeals by William J. Hahn, as receiver in the above entitled action, and John W. Arctander, as attorney of said receiver, from an order and supplemental order of the district court for Hennepin county, Smith, Simpson and Lancaster, JJ., made respectively on January 3, and January 13, 1898, on the hearing of the receiver's account and report, disallowing in part the claim and account of

said attorney, and more particularly the first, second, third, fourth, fifth, sixth, seventh, tenth, and eleventh items thereof.   Reversed.

Exhibit C, referred to in the opinion, was as follows:

**Bill of Attorney of Receiver for Services Rendered.**

William J. Hahn,
As Receiver in Case of Hans H. Olson v. The State Bank et al.,
To Jno. W. Arctander, Attorney, Dr.

| | 1896. | | |
|---|---|---|---|
| 1. | Mch. 11. | To consultation with Receiver as to Rice payment and how affect judgment..... $ | 5.00 |
| 2. | Mch. 19. | To consultation with Receiver on Ames protest of payment and course to take as to costs..... ...... ..................... | 5.00 |
| 3. | | To examination of satisfaction Ames judgment and consultation on how to draw it so as not to affect other claims.......... | 5.00 |
| 4. | Mch. 21. | To consultation with Receiver with reference to transcripts of judgment to different counties .......... ................. | 5.00 |
| 5. | Mch. 22 to May 30, and Aug. 5 to Sept. 10.   To investigating law and precedents on proceedings against foreign stockholders (over 3 months' time).................. | | 1,500.00 |
| 6. | Aug. 14. | To consultation with Receiver as to property held by Smith & Pillsbury .......... | 5.00 |
| | 1897. | | |
| 7. | Feb. 24. | To investigation of standing of H. M. Nowell and making application for compromising judgment against him for $3,500.00 | 50.00 |
| 8. | Mch. 1 to Apr. 1.   To examining law as to whether attachment would lie against a defendant after judgment against other defendants, and commencing attachment proceedings and bringing Catherine C. Chadbourn into court, and for bringing about payment by her of the full claim against her ($8,000.00) ........ ................. | | 1,000.00 |
| 9. | May 15. | To paid Logan Breckenridge for investigating property of defendant Catherine C. Chadbourn in Olmsted Co., and for services with reference to attachment of same .... .......... ................. | 75.00 |
| 10. | May. | To examination on proposal of release of judgment against three properties of de- | |

fendant Tharalson, mortgaged for a con-
sideration of $150.00, and three consulta-
tions with Receiver on same............ 25.00

11. June, July and Aug. To repeated efforts to secure
payment from C. A. Smith, involving sev-
eral interviews with Receiver, Smith and
Paine's attorneys (whereby over $1,400.00
obtained for Receiver) ............... 25.00

12. Sept. 10–96 to July 15–97. To examination of rec-
ords of Register of Deeds in 30 counties
for property of different defendants, es-
pecially Chadbourn's ............... .... 300.00

13. Mch. 19–96 to Aug. 17–97. To drawing and exe-
cuting ten (10) satisfactions of judgment. 50.00

14. Aug. 25–97. To paid Green & Wilson for examin-
ation of records of Hennepin Co., and fur-
nishing abstracts of Chadbourn's trans-
fers ..... ........................ 50.00

15. Oct. 26, 27. To trip to Chicago, consultation with
attorneys there and negotiations with H.
S. Durand, and bringing about settlement
of his stock liability. (Expenses includ-
ed.) ........ ........................ 250.00

16. Nov. 3. To application to court and order for
leave to settle Durand claim for $1,000... 25.00

17. Nov. 23. To drawing release for Durand.......... 10.00

$3,385.00

*Jno. W. Arctander*, for appellants.

A receiver is not, at least without extra compensation, expected himself to perform other duties than those strictly executive, and for all services requiring legal skill he is to be allowed extra compensation out of the funds. Farmers L. & T. Co. v. Central Ry. Co., 8 Fed. 60; Henry v. Henry, 103 Ala. 582; High, Rec. §§ 188, 805; Lottimer v. Lord, 4 E. D. Smith, 183; Stuart v. Boulware, 133 U. S. 78; 2 Perry, Trusts, § 912; Adams v. Haskell, 6 Cal. 475; Abbott v. Downer, 54 Iowa, 687; Cake v. Woodbury, 3 Dist. Col. App. 60; Saulsbury v. Lady Ensley, 110 Ala. 585; Crumlish v. Shenandoah, 40 W. Va. 627. The right of a receiver to employ counsel at the expense of the fund has been maintained even in cases in which the order appointing the receiver was reversed, and in which the counsel fees allowed were for services in attempts to maintain the

appointment of the receiver. Kimmerle v. Dowagiac, 105 Mich. 640; Cowdrey v. Railroad Co., 1 Woods, 331; High, Rec. § 808; State v. Butler, 15 Lea (Tenn.) 113; In re Bank of Niagara, 6 Paige, 213. The attorney has no right to appeal, and to obtain justice it has been necessary for the receiver to take an appeal. Stuart v. Boulware, supra. The attorney cannot sue the receiver, but must look to the fund in court. In re Anglo-Moravian, L. R. 1 Ch. Div. 130.

*Brooks & Hendrix,* by leave of court, submitted a brief in behalf of Frank C. Brooks, who was appointed receiver upon the resignation of appellant receiver after the appeals were perfected.

The appeals should be dismissed. The attorney had no right of appeal. An allowance of counsel fees on behalf of a receiver is made to the receiver and not to the counsel. Stuart v. Boulware, 133 U. S. 78. The appeal on the part of Hahn was taken by him "as receiver." In that capacity, at least, he has not been aggrieved. As receiver, he cannot complain that the funds in his hands have not been diminished. These orders are not "final," within the meaning of G. S. 1894, § 6140. Appellant Hahn was allowed all he asked for. The court below found that the aggregate sum allowed for the receiver and the attorney was an adequate compensation for all services performed by both; and the sum allowed exceeded in the aggregate all sums claimed or asked for by the receiver and his attorney. No facts are disclosed from which it can be inferred that the receiver ever incurred any personal liability to his attorney on account of the services rendered by the latter. Hayes v. Crane, 48 Minn. 39. These were discretionary orders. The judges of the court below could rightfully use their personal knowledge of the facts in passing upon the reasonableness of the attorney's charges. In re State Bank, 57 Minn. 361. The necessity for employment of counsel must be clearly shown. Gluck & Becker, Rec. § 111; Terry v. Martin, 7 N. M. 54; Henry v. Henry, 103 Ala. 582; Saulsbury v. Lady Ensley, 110 Ala. 585. This court should not fix the allowance. The court below did not undertake to find specifically the value of each item of the alleged services of the attorney, charges for which were disallowed. And had it done so, it would not have

been required to find the value to be that testified to, though the testimony offered and received was wholly uncontradicted. Stevens v. City of Minneapolis, 42 Minn. 136; Olson v. Gjertsen, 42 Minn. 407; Harrow v. St. Paul & D. R. Co., 43 Minn. 71; Papooshek v. Winona & St. P. R. Co., 44 Minn. 195; Aldrich v. Grand Rapids C. Co., 61 Minn. 531; In re Penner Co., 93 Wis. 655. Of necessity, this rule applies when, as in this case, the trial court bases its decision in part upon its personal knowledge of facts not proven or shown by the evidence received. And if all the evidence and facts upon which the trial court based its conclusions were before this court, they would not determine a question of fact. Jordan v. Secombe, 33 Minn. 220; Warner v. Foote, 40 Minn. 176; Williams v. Schembri, 44 Minn. 250; Miller v. Chatterton, 46 Minn. 338; Smith v. Kipp, 49 Minn. 119. It appears affirmatively from the record that the orders are neither erroneous nor unjust. It was the duty of the court, whether objections were made by the creditors or not, to supervise the management of the estate and to examine the accounts of the trust. Branch v. American, 57 Kan. 282. The very fact that the services for which the $1,500 was charged were fruitless was a sufficient justification for the orders complained of. Beach, Rec. § 754; Kerr, Rec. 244. This court has never increased an allowance made below. In re Shotwell, 49 Minn. 171; In re State Bank, supra.

COLLINS, J.

Appeals taken from orders, original and supplemental, made by the district court when passing upon a partial report and account of a receiver of a banking corporation, which report and account included an attorney's claim for legal services rendered and for disbursements made, a part of said claim being rejected and disallowed.

The claim in question was itemized, quite in detail, each item being numbered, and is known in the paper book as "Exhibit C." The items numbered from 1 to 7, inclusive, and items 10 and 11, were wholly disallowed, for reasons hereinafter stated. Items 8, 9, 12, 14 and 15, aggregating the sum of $1,675, were allowed in full, while on account of items 13, 16, and 17, $25 was allowed; thus

making a total allowance of $1,700. Several of the rejected items were charges for advice to the receiver in respect to legal matters. Some were for drawing legal documents, and one, for quite a large sum of money, was for "investigating law and precedents on proceedings against foreign stockholders" for over three months.

This entire exhibit was supplemented by oral testimony in respect to each item, the nature of the services, the length of time consumed in the work, and the value thereof, all of which testimony stood uncontradicted. And the reasons which seem to have actuated the court when refusing to allow a number of the items constituting the attorney's account are thus stated in the supplemental order:

"All of the services set forth in the attorney's bill (Exhibit C), in items disallowed, should either have been performed by the receiver, or if performed by another, at his request, should be paid for by him out of the said percentage,"—referring to a percentage agreed to by the receiver, at the time of his appointment, as compensation for his services in making certain collections.

It appears from this excerpt that it was the opinion of the court that the duties of a receiver included those ordinarily performed by an attorney at law, and these duties he was expected to perform himself, if qualified, or, if not, he was to employ an attorney at his own expense. If, then, the receiver is an attorney, it becomes his duty to perform legal services of the character described in the disallowed items, for which he is not to be paid. And if he is not an attorney, and for that reason is compelled to take counsel and advice of a man of that profession, or if it becomes necessary to have the authorities examined upon some question of law by a properly qualified person, the receiver must pay the fees himself for such examination, out of the percentage stipulated as his compensation for collecting claims due the estate.

We do not understand this to be the law in any case, and certainly it ought not to be where, as in the present, the order of appointment specifically provided for the employment of such counsel as the receiver deemed necessary for the management of all actions, suits, or other affairs as had arisen or might arise in the execution of the trust, and also for the purpose of advising such receiver in

the performance of his duties, and further provided for the payment of proper counsel fees for such services.

Again, the receiver, if he is an attorney, is not required himself to perform any other duties than those strictly administrative or executive, or, if he does, he is entitled to additional compensation for his services. Farmers L. & T. Co. v. Central Ry. Co., 8 Fed. 60. And when employing counsel the receiver must also remember that it is his duty to perform such duties as any ordinarily competent business man is presumed to be capable of performing. These are his duties, and he is paid therefor. It is only for services requiring special legal skill that he will be allowed counsel fees. Henry v. Henry, 103 Ala. 582, 15 South. 916. See, also, Stuart v. Boulware, 133 U. S. 78, 10 Sup. Ct. 242; Adams v. Haskell, 6 Cal. 475.

There must be a real occasion for the employment of counsel, and, if there is no necessity shown for this employment, the court will not ordinarily allow his fees as a necessary expense. We cannot agree with the court below that all of the services mentioned in the disallowed items should have been performed by the receiver, for in some instances, at least, the work required the investigation and advice of counsel,—the services of an attorney at law. Much that was done could not have been done by the ordinary business man, nor was it either administrative or executive. It was not incumbent upon the receiver to perform these duties simply because he happened to be an attorney, nor would it have been his duty, had he been a layman, to secure counsel at his own expense to examine into some of the matters in question, that he might be advised and the estate properly protected.

The real difficulty with the position taken by the judges who refused to allow any of these items is in holding, in effect, that legal services were required of the receiver as a part of his duties, and that if the services were not performed by him when so required, but were performed by counsel, the obligation was upon the receiver himself to pay for the services.

We agree with counsel for the present receiver that, when passing upon the reasonableness of the attorney's charges, the judges could rightfully use their personal knowledge of what had been done in respect to the estate by the attorney, and they could also

take into consideration the character of legal services theretofore rendered by counsel, and the amount already allowed on account of the same. The correctness of such an account is not to be determined, as in ordinary cases, exclusively upon the evidence introduced on the hearing, for the judges have personal knowledge of the proceedings, of what has been done, and of the general nature and extent of the services alleged to have been rendered, and this knowledge may properly be used when determining what would be fair compensation for the attorney's services. This is the rule laid down when considering an assignee's account (In re State Bank, 57 Minn. 361, 59 N. W. 315), and is strictly in point here.

And, further, we agree with counsel that it is always the duty of the court, whether objections are or are not made by the creditors of a trust estate, to supervise and scrutinize closely the trust account. When this is done in accordance with the rules of law hereinbefore stated, this court will not interfere or direct a revision, except where there has been an abuse of that sound discretion which, of necessity, rests with the court below.

Assuming that the order appealed from would be reversed, we are asked by counsel to fix and determine in this court the amount which should be allowed on account of the services mentioned in the rejected items; and no objection thereto seems to be made by opposing counsel. But it is not within the power of this court, in the first instance, to fix the fees or compensation to be allowed to trustees for their personal services, or for the services of counsel employed by them, in proceedings pending in the district court, and over which such courts have original jurisdiction.

The orders appealed from in so far as they disallowed the first, second, third, fourth, fifth, sixth, seventh, tenth and eleventh items of said partial report and account, are reversed, and the cause is remanded for further proceedings in accordance with the views herein expressed.