## Scott's Estate.

*Trusts and trustees—Order to pay over money—Account.*

It is error for the orphans' court to make an order on a testamentary trustee to pay over moneys to legatees under the will where it appears that the trustee has filed no account, has not been requested to file an account, and asserts that it is uncertain whether the trust money consists of income or principal, and that it is necessary that this question should be determined before a proper distribution can be made.

Argued April 26, 1906. Appeal, No. 68, Jan. T., 1906, by the Union Trust Company, from decree of O. C. Erie Co., May T., 1905, No. 66, directing payment of money in Estate of William L. Scott, deceased. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Petition for order to pay over money.

WALLING, P. J., filed the following opinion:

William L. Scott, a resident of this city, died testate on September 19, 1891. By his last will, the residue of his estate is given to the Union Trust Company of New York in trust to pay the income to certain legatees, members of Mr. Scott's family, and to reserve the principal for final distribution. At the time of his death, Mr. Scott was a member of a partnership engaged in the coal business under the firm name of William L. Scott and Company, of which firm he was the owner of twenty-six thirty-fifths.

After his death said firm in 1892 became chartered as a corporation under the name of the W. L. Scott Company, with a capital stock of $1,000,000. The assets of the firm constituted the property of the corporation. Such assets had a nominal net value of $1,194,194.45, but their actual net value was about $955,000; however, such assets went into the corporation at $1,000,000. The members of the firm became stockholders of the corporation, but a part of the interest of the Scott estate was sold to other stockholders so that said estate owned practically fifty-five per cent of the stock of the corporation. Fifty-four hundred and ninety-nine of the 10,000 shares of the

stock of the corporation were owned by said estate. The business of the corporation was successful, but in 1904 the stockholders unanimously decided to quit business and go into liquidation. The hard coal branch of the business was closed out December 31, 1904, and the soft coal business of the corporation terminated April 30, 1905. The said W. L. Scott Company on October 28, 1904, declared a distribution amounting to $397,772.94 among the stockholders as payment upon capital stock. And on January 30, 1905, declared a further distribution of $602,227.06, as the balance of the $1,000,000 of capital stock, which distributions were duly made to the stockholders, of which the said Union Trust Company, as trustee under the will of Wm. L. Scott, deceased, received its proper share.

The W. L. Scott Company owned a three-fifths interest in a corporation, engaged in the coal business known as the Union Coal Company. The property, etc., of the Union Coal Company was sold in November, 1903, to the Susquehanna Coal Company for the sum of $700,000; and three-fifths thereof, to-wit: the sum of $420,000, became payable to the W. L. Scott Company. Three hundred and ninety-seven thousand seven hundred and seventy-two and 94-100 dollars of said $420,000, was, by arrangement, paid by certificates of the Farmers' Loan & Trust Company of New York, and said certificates were delivered to the stockholders of the W. L. Scott Company in part payment of the capital stock of which certificates the Union Trust Company, as trustee, received its due proportion. Said certificates are interest-bearing and nothing is shown to indicate that they will not ultimately be paid in full.

After payment of said capital stock, the W. L. Scott Company had a large surplus amounting to about $1,600,000, of which over one-half was cash on deposit. On April 12, 1905, the W. L. Scott Company declared a dividend of five per cent on the amount of its original capital stock, as surplus earnings. This dividend, amounting to $50,000, was paid from said large surplus; and said Union Trust Company, trustee, receiving as its share of said dividend the sum of $24,495. The legatees under Mr. Scott's will, who are entitled to the income of said trust estate, aver that said last named sum is income and should be distributed to them as such. The Union Trust Company being

in doubt, declines to so treat it. The facts appear more at large in the requests of the respective parties.

In our opinion, this court has jurisdiction. If not, what court has? In general, the proper place to settle an estate is the domicile of the testator. Did Mr. Scott oust the jurisdiction of this court by appointing a nonresident trustee?

Personal property follows the domicile of its owner and it would seem reasonable that a foreign corporation, or non-resident, who accepts a trust created by the will of a resident of Pennsylvania thereby becomes subject to the jurisdiction of the proper courts of this state: Musselman's Appeal, 101 Pa. 165.

As the receipt of the $27,495 is admitted, no reason appears why the Union Trust Company should file an account before making a distribution thereof; it would be an unnecessary expense to require an account each time before making a distribution of an item or items of income.

In our opinion, the $50,000 dividend is income and should be distributed as such, for if it be principal, then the whole surplus of $1,600,000 is principal, and the principal of Mr. Scott's estate, that was invested in the W. L. Scott Company has increased over 150 per cent.

In our opinion such surplus under the facts of this case, should be distributed as income. Nor should this large surplus be tied up on a theory that a loss may possibly result on the certificates received from the sale of the Union Coal Company property, and which have been distributed in payment of a part of the capital stock of the W. L. Scott Company. The capital of the trust estate will certainly not be impaired by the distribution of the $27,495; and no necessity appears for tying up the large surplus until all matters connected with the W. L. Scott Company are liquidated.

Mr. Scott manifestly intended the income of the trust estate for the benefit of the members of his family, and it should be so used.

And now, January 22, 1906, the prayer of the petitioners in above-stated case is granted and counsel is requested to prepare the proper decree.

*Error assigned* was the order of the court.

*J. Ross Thompson*, of *J. Ross Thompson & Son*, for appellants.
—Diligent search has failed to discover any case in Pennsylvania in which the orphans' court has granted relief even approximating the kind asked for by petitioners, except upon an accounting.

The proper way to raise such a question is to cite the trustee to account, when the trustee may either dispute the petitioner's right to an account or he may file an account and resist the petitioner's claim to any share of the fund in court: Morton's Estate, 201 Pa. 269; Jacoby's Estate, 201 Pa. 442.

*Frank Gunnison*, with him *T. A. Lamb*, for appellees.—We are not, without ample statutory authority, supported by judicial decision, for the contention that the orphans' court has the jurisdiction claimed in this case, and which was sustained by the court below: Brown's App., 12 Pa. 333; Wapples's App., 74 Pa. 100; Hart's Est., 12 Pa. Dist. Rep. 47; Van Dyke's App., 4 W. N. C. 283; Van Dyke's Estate, 11 Phila. 15; Musselman's App., 101 Pa. 165; Freeman's App., 68 Pa. 151; Conrow's Estate, 16 Phila. 284; Moore v. Fields, 42 Pa. 467; Parsons v. Lyman, 20 N. Y. 103.

OPINION BY MR. JUSTICE MESTREZAT, May 14, 1906:

The learned court below erred in entertaining this petition and in making a summary order that the testamentary trustee pay to the petitioners the money alleged to be in its hands. The petitioners are legatees under the will of the late William L. Scott, deceased, and claim that the Union Trust Company of New York, the trustee under said will, has a fund which as trustee it should pay to them in the proportions directed by the will. The court made an order for the payment of the money as prayed for in the petition. No account has been filed by the trustee and the petitioners have made no request that an account should be filed. In fact, their position is that none is necessary. But the numerous substantial questions raised on this appeal by the trustee make it apparent that the usual and proper course in such cases should have been followed in this case by the trustee filing an account, and the controverted questions raised by exceptions. The trustee concedes a sum of money to be in its hands, but denies that it has sufficient

information to enable it to determine whether or not the money is income to which the petitioners are entitled, or principal which should be held by it for the remainder-men. The petitioners, as life tenants are entitled to the income, but not to the principal. It is necessary, in order to protect the trustee, that the question of whether the fund is principal or income should be determined by the court, and to make the adjudication effective for that purpose, all parties, the remainder-men as well as those having life interests, must have notice. This makes it necessary that an account be filed by the trustee and that the statutory notice be given, so that all parties interested in the fund for distribution may be heard and their rights be adjudicated. On the filing of an account, it can then be determined whether the fund is subject to the payment of debts, fees to court officers, or commissions to the trustee; and also, if such payments are required, the character of the residue, whether it is principal or income and to whom and in what proportion it is payable.

From the suggestions of the counsel for the trustee, we presume that it will voluntarily file an account in order that the rights of the parties to the fund in its hands may be speedily adjudicated. If, however, the trustee declines to file an account, it may then be cited to do so in the regular and orderly way when its rights as well as those of all interested parties may be conclusively determined.

The decree of the court below is reversed and the petition is dismissed at the costs of the petitioners.