In the matter of the estate of THOMAS COYLE, deceased.

[Decided January 16th, 1931.]

*Mr. Andrew E. Nolan,* for the appellant-executor.

*Mr. John J. Hoffman* and *Mr. Robert H. Brenner,* for the respondents.

BIGELOW, VICE-ORDINARY.

At the time of the death of Thomas Coyle, a savings account in the Highland Trust Company of Union City stood in the name of "Thomas Coyle in trust for Albert Bodden." Mr. Bodden is the executor of Mr. Coyle's will. He withdrew from the trust company the amount of this de-

posit. The orphans court decreed that he charge himself as executor with the amount so withdrawn.

The testator made his home with Mr. Bodden and his wife from 1921 until his death, April 28th, 1928. In 1923 he had a slight stroke of apoplexy and on several occasions thereafter he was again stricken. In 1926 and 1927 his condition was very bad. For years prior to his death he was quite helpless, according to appellant. From the time of his first stroke he was unable to work, although he continued to be in receipt of a salary of $37.50 a week. At the beginning of this period, he had an account with the trust company in his own name. Sometime between April 14th, 1924, and April 7th, 1926, he had the title of the account changed on the books of the trust company by adding the words "in trust for Albert Bodden." On the last mentioned date, he withdrew from this account $200. Thereafter, no further withdrawals were made, but Mr. Coyle made eleven deposits totaling $1,450. The balance at his death was $8,247.37. His gross estate, exclusive of this account, amounted to $1,359.87.

The special master permitted the executor to testify to conversations and transactions with the deceased. This evidence was admitted over the objection of the respondents and was incompetent and should be disregarded. *In re Atkinson's Estate,* 86 *N. J. Eq.* 173; 98 *Atl. Rep.* 269; *In re Fulper's Estate,* 99 *N. J. Eq.* 293; 132 *Atl. Rep.* 834.

Appellant contends that there was a valid gift *inter vivos* or else the creation of a valid and enforceable trust. "Proof of a gift *inter vivos* must establish three things: (1) A donative intent on the part of the donor, (2) an actual delivery of the subject-matter of the gift, and (3) a stripping of the donor of all ownership and dominion over the subject-matter of the gift." *Besson* v. *Stevens,* 94 *N. J. Eq.* 549; 120 *Atl. Rep.* 640; *Jones* v. *Westcott,* 8 *N. J. Mis. R.* 312; 150 *Atl. Rep.* 50.

The elements by which is tested a voluntary declaration of trust as distinguished from a declaration made upon consideration, are the same as the tests of a gift. *Nicklas* v.

*Parker,* 69 *N. J. Eq.* 743; 61 *Atl. Rep.* 267; affirmed, 71
*N. J. Eq.* 777; 71 *Atl. Rep.* 1135.

I think that when the principles discussed in *Dunn* v.
*Houghton,* 51 *Atl. Rep.* 71, are applied to the present case,
it appears that the second and third elements of a valid
gift have been proved. But the question remains whether
the executor has sustained the burden of proving a donative
intent. The evidence is scanty and conflicting.

The opening of a bank account by one person in his own
name in trust for another does not, standing alone, show
donative intent. *Nicklas* v. *Parker, supra; Jefferson Trust
Co.* v. *Hoboken Trust Co.,* 107 *N. J. Eq.* 310; 152 *Atl. Rep.*
374. Furthermore, it is not enough that the appearance of
a donative intent be shown, but it must be proved that the
intent was real and not the product of the weakness or neces-
sity of the donor, or the dominating influence of the donee.
The donor was a sick and elderly man, helpless, living in the
household of the donee. He acted, as far as is shown, with-
out independent advice. He stripped himself of the greater
part of his property. A gift or a voluntary trust under
these circumstances should not be sustained.

There is a suggestion that the trust was created not as a
gift but upon consideration. Mrs. Bodden testified that Mr.
Coyle "always told me that the money in the bank was Al's
for taking care of him." She testified further that when
the doctor told Mr. Coyle he should go to a hospital and
asked if he had any money, Mr. Coyle said "he didn't, that
he gave everything to Al and that he would take care of
him." Dr. Reich corroborated this evidence. The principal
evidence to the contrary is the will itself, dated July 22d,
1927, in which the testator directs that $800 be spent for a
monument at the cemetery and for the maintenance of the
cemetery lot, and in which he gave the residue of his prop-
erty in equal shares to his nine nephews and nieces. This
certainly indicates that Mr. Coyle did not think he had bar-
gained away his entire estate. I find that the consideration
for the alleged declaration of trust has not been proved.
The result is that the decree of the orphans court should be
affirmed.